FILED _____ LODGED
_____ RECEIVED _____ COPY

MAR 3 1 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

CRESTMARK, a division of METABANK,
NATIONAL ASSOCIATION,

                    Plaintiff,

v.

SILVER BIRCH SYSTEMS LLC; and
DANIEL T. OSHATZ, individually.

                    Defendants.

_____/

**NOTICE OF RECEIVERSHIP
PURSUANT TO 28 U.S.C. § 754**
Misc. No. _ **MC-22-00015-PHX**

United States District Court
Southern District of Michigan
Case No. 22-cv-10092

Hon. Bernard A. Friedman
Mag. Judge Anthony P. Patti

### NOTICE OF RECEIVERSHIP
### PURSUANT TO 28 U.S.C. §754

        Scott Eisenberg, the Court-Appointed Receiver, hereby provides notice, pursuant to 28

U.S.C. § 754, that on March 22, 2022 the Court entered an Order Appointing Receiver appointing

him as Receiver for Silver Birch Systems, LLC, in the matter of Crestmark, a division of Metabank,

N.A. v. Silver Birch Systems, LLC et al., Case No. 22-cv-10092, pending in the United State

District Court for the Eastern District of Michigan.   A true and correct copy of the Complaint and

the Order Appointing Receiver are attached hereto as Exhibit A and Exhibit B respectively.


                    Respectfully submitted:

                    SCHAFER AND WEINER, PLLC

                    /s/ Howard M. Borin
                    HOWARD M. BORIN (P51959)
                    Counsel for Scott Eisenberg,
                      solely in his capacity as Receiver
                    40950 Woodward Ave., Suite 100
                    Bloomfield Hills, MI  48304
                    (248) 540-3340
                    hborin@schaferandweiner.com


Dated:  March 30, 2022

{00944169.1}

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CRESTMARK, a division of METABANK,
NATIONAL ASSOCIATION,

                      Plaintiff,

      v.

SILVER BIRCH SYSTEMS LLC; and DANIEL T.
OSHATZ, individually.

                    Defendants.

**Case No.**

**COMPLAINT**

Plaintiff CRESTMARK, a division of METABANK, NATIONAL ASSOCIATION ("Lender"), through their undersigned counsel, for its Complaint against Defendants SILVER BIRCH SYSTEMS LLC ("Borrower") and DANIEL T. OSHATZ ("Guarantor," together with Borrower, "Defendants"), allege as follows:

**NATURE OF THE ACTION**

1.     In this action, Lender seeks to enforce its rights and remedies with respect to (a) a business loan made to Borrower with outstanding principal balances totaling $6,328,240.01; and (b) a guaranty issued in favor of Lender, whereby each of the Defendants unconditionally guaranteed and promised to pay promptly all indebtedness due and owing under certain commercial loan agreements entered between Lender and Borrower and Guarantor (Guarantor and Borrower will be collectively referred to as the "Loan Parties").

**SUBJECT MATTER JURISDICTION AND VENUE**

2.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the action is civil in nature, Lender is a citizen of a different nation than

Defendants, and the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

3.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District and in the State of Michigan. Additionally, Borrower and Guarantor consent to venue in this District pursuant to the Loan Documents (as defined below).

## PARTIES

4.     Lender is a national banking association domiciled in, and a citizen of, South Dakota. Lender's main office, as identified in its Articles of Association, is located in the City of Sioux Falls, County of Minnehaha and State of South Dakota.

5.     Borrower is a limited liability company with its principal place of business believed to be located in Phoenix, Arizona.[1] Guarantor owns one hundred percent (100%) of the ownership interests in Borrower.  Guarantor, as noted below, is a citizen of New York State.  For purposes of jurisdiction, Borrower is domiciled in, and a citizen of, New York.

6.     Guarantor is an individual domiciled in, and a citizen of, New York.

## BACKGROUND

I.   **Lender Advanced Loans to Borrower.**

7.     On or about September 13, 2021, Lender extended Borrower a line of credit loan up to $10,000,000.00 (the "Loan"). Amounts to be advanced under the Loan were to be a percentage of accounts receivable due from Borrower's customers (which are defined, *inter alia*, in the Loan Agreement as "Account Debtors").

---

[1]     Borrower has provided Lender with two different business addresses located in Phoenix, Arizona.  On information and belief, Borrower does not operate or own or lease office space at either address.

8.      The Loan is evidenced, in part, by that certain Loan and Security Agreement, dated September 13, 2021 (the "Loan Agreement"), entered between Lender and Loan Parties, as amended, modified and restated from time to time, and that certain Promissory Note, dated September 13, 2021 ("Note"), between Lender and Borrower. A true and correct copy of the Loan Agreement is attached hereto and incorporated herein as **Exhibit A**. A true and correct copy of the Note is attached hereto and incorporated herein as **Exhibit B**. The Loan Agreement, Note and all the instruments, agreements and documents related thereto shall be collectively referred to as the "Loan Documents."

9.      To induce Lender to extend the Loans, Guarantor individually, independently and unconditionally guaranteed all obligations and liabilities due and owing by Borrower to Lender pursuant to the Loan Documents, by executing that certain Personal Guaranty ("Guaranty"), dated September 13, 2021, in favor of Lender.  A true and correct copy of the Guaranty is attached hereto and incorporated herein as **Exhibit C**.

10.     Pursuant to the Guaranty, Guarantor guaranteed the "full, prompt and unconditional payment when due of all existing and future obligations and indebtedness of[] Borrower to [Lender] including, but not limited to the Indebtedness[.]" Guaranty at § 1.

**II.   Loan Parties Granted Lender a Security Interest in Certain Assets**

11.     In order to secure their obligations and liabilities to Lender, Loan Parties granted Lender:

> a security interest in all of its assets, now existing or hereinafter arising, wherever located, including all Accounts, Goods, Inventory, Equipment, Chattel Paper, Instruments, Investment Property, specifically identified Commercial Tort Claims, Documents, Deposit Accounts, Letter of Credit Rights, General Intangibles, Contract Rights, customer lists, furniture and fixtures, books and records and supporting obligations for any of the foregoing ("Collateral"), and all proceeds of the foregoing, to secure repayment of the Obligations.

3

Loan Agreement, § 8(A).[2]

12.      On September 13, 2021, Lender perfected its security interest in the Collateral by duly filing a UCC-1 financing statement with the Arizona Secretary of State as File No. 202100467237, as amended, renewed or supplemented. A true and correct copy of the UCC-1 Filing is attached hereto and incorporated herein as **Exhibit D**.

### III.      Loan Parties Commit Numerous Defaults Under the Loan Documents

13.      Pursuant to Sections 2(C)(i) and (iv) of the Loan Agreement, "Borrower must repay all Advances with respect to the Loans with interest, which is due monthly as specified in the Note, along with all other fees and expenses of [Lender] set forth [in the Loan Agreement] or in the Schedule."

14.      Additionally, "Borrower must pay interest on the principal amount which is outstanding each month in arrears . . . until the Indebtedness is fully paid." Note.

15.      To facilitate payment on the Loan, the Loan Agreement requires Borrower to establish a Lockbox Account (as defined in the Loan Agreement), into which Borrower is required to direct all proceeds due from any of Borrower's Account Debtors. Loan Agreement § 5.

16.      Teleescrow, Inc. ("Teleescrow") holds the Lockbox Account. The funds held in the Lockbox Account are to be remitted to Lender for payment of the Loan.

17.      From September through November 2021, Borrower and Teleescrow timely transferred funds from the Lockbox Account to Lender for payment of the Loan. However,

---

[2]      Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Loan Documents.

beginning in December 2021, Teleescrow paid Lender in smaller amounts and less frequently.

18.    As of December 25, 2021, Teleescrow and Borrower completely ceased all payments to Lender, notwithstanding that Teleescrow continues to collect and hold payments from Borrower's Account Debtors.

19.    The Lockbox Account constitutes an "account" and "asset" of Borrower, and is therefore included in the Collateral. Moreover, the proceeds received into the Lockbox Account, constitute an "asset" of Borrower.

20.    Pursuant to the Loan Agreement, Lender "may in its sole discretion collect any Obligations due [Lender] by (i) directly applying funds in the Lockbox Account . . . to the Obligations[.]" Loan Agreement § 2(C).

21.    Additionally, Section 8(C)(ii) of the Loan Agreement imposes the duty on Borrower to "cooperate with [Lender] in obtaining control of any Collateral in the possession of third persons[.]"

22.    Despite demand, Borrower has failed to cooperate with Lender in obtaining control of the Collateral in the Lockbox Account in Teleescrow's possession.

23.    Pursuant to the Loan Agreement, each month Borrower is obligated to:

> deliver to [Lender] management prepared financial statements, balance sheets, and profit and loss statements for the month then ended . . . [m]onthly detailed Accounts Receivable Aging Reports no later than 15 days after the end of each month [and m]onthly Accounts Payable Aging Reports no later than 15 days after the end of each month.

Loan Agreement, Schedule § 13.

24.      Borrower failed to provide prepared financial statements, balance sheets, and profit and loss statements for the months of September 2021, October 2021 and November 2021, as well as the aging reports as required by the Loan Agreement.

25.      Additionally, pursuant to Section 10(O)(iii) of the Loan Agreement, Borrower agreed that "all of Borrower's Inventory and Equipment . . . shall remain free from all liens, claims, encumbrances, and security interests[.]"

26.      Beginning in or around December 2021, Borrower granted at least three blanket liens on the Collateral, evidenced by UCC statement number 2022-000-1183-5) (December 21, 2021), UCC statement number 2021-007-0010-6 (December 31, 2021) and UCC statement number 2022-000-1545-7(January 6, 2022 ) (collectively, "Subsequent UCC Filings"). True and correct copies of the Subsequent UCC Filings are attached hereto as **Exhibit E**.

27.      "Borrower must comply with its representations, promises, covenants and reporting requirements set forth in [the Loan Agreement], in the Schedule and in the other Loan Documents . . . Borrower's failure to do [so] is a default[.]" Loan Agreement § 2(D).

28.      Each of the foregoing acts and omissions by Borrower constitute a Default under the Loan Agreement.

**IV.    Lender Accelerated the Total Indebtedness and Provided Ample Notice and Opportunity to Cure**

29.      On January 12, 2022, based on Borrower's Defaults and after ongoing communications with Loan Parties, Lender sent Loan Parties a Notice of Default and Demand ("Demand"), notifying Loan Parties of the Defaults and demanding that Loan Parties, *inter alia*, remit full payment of the Loan and all other amounts owed under the Loan Documents by January 18, 2022. A true and correct copy of the Demand is attached hereto as **Exhibit F**.

30.    Pursuant to the Note, the Loan is due and owing "ON DEMAND." Note (emphasis original).

31.    Additionally, pursuant to the Guaranty, Guarantor "absolutely, irrevocably and unconditionally" guaranteed payment of all amounts owed by Borrower "on demand." Guaranty § 1.

32.    Despite demand, Loan Parties have failed and refused to pay the amounts due and owing under the Loan Documents.

33.    Upon the occurrence of a Default or if Borrower fails to pay the Obligations on demand, under the terms of the Loan Documents, Lender may, inter alia: 1) charge interest at the Extra Rate (Loan Agreement § 14; Note); and 2) require Borrower to gather up the Collateral and make it available to Lender for Lender to conduct UCC foreclosure sales (Loan Agreement § 14).

**COUNT I**
**BREACH OF CONTRACT – LOAN AGREEMENT**
(BORROWER)

34.    Lender restates and incorporates paragraphs 1 through 33 as if fully set forth herein.

35.    For good and sufficient consideration, Lender and Borrower entered into the Loan Agreement, pursuant to which Lender provided the Loan to Borrower.

36.    Lender has performed any and all conditions and obligations required of it under the Loan Documents.

37.    Borrower breached its contractual obligations by virtue of:

    a.    failing to deliver to Lender monthly management-prepared financial statements, balance sheets, and profit and loss statements, for the months of September 30, 2021, October 31, 2021, and November 30, 2021, as required under Section 13 of the Schedule to the Loan Agreement;

7

b.      failing to deliver to Lender updated accounts receivables aging and accounts payable aging reports, as required under Section 13 of the Schedule to the Loan Agreement;

c.      failing to keep the Inventory free from all liens, claims, encumbrances, and security interests, as required pursuant to Section 10(O)(ii) of the Loan Agreement;

d.      failing to cooperate with Lender in obtaining control of its Collateral in the possession of Teleescrow, as required under Section 8(C)(ii) and 9(F) of the Loan Agreement;

e.      failing to: (i) cooperate with Lender to enable Lender's collection of funds from the Lockbox Account, and/or (ii) directly pay amounts outstanding on the Loans, as required under Sections 2(C)(i) and (iv) of the Loan Agreement; and

f.      failing to pay outstanding amounts when due pursuant to Section 2(C) of the Loan Agreement.

38.     Pursuant to the Loan Agreement, Borrower is obligated to pay Lender's attorney's fees and cost incurred in enforcing its rights under the Loan Agreement. Loan Agreement §§ 2(A)-(B), 4.

39.     As a result of Borrower's breach, Lender has suffered damages in the amount of the no less than $6,328,240.01 under the Loans, plus Extra Rate interest, reasonable costs and expenses, including attorneys' fees, in attempting to collect payment.

## COUNT II
## BREACH OF CONTRACT – NOTE
### (BORROWER)

40.     Lender restates and incorporates paragraphs 1 through 39 as if fully set forth herein.

41.     For good and sufficient consideration, Lender and Borrower entered into the Note, pursuant to which Lender provided the Loan to Borrower.

8

42.     Lender has performed any and all conditions and obligations required of it under the Loan Documents.

43.     Borrower breached its contractual obligations by failing to pay outstanding amounts "ON DEMAND." Note (emphasis original).

44.     Pursuant to the Note which references the Loan Agreement for additional terms, Borrower is obligated to pay Lender's attorney's fees and cost incurred in enforcing its rights under the Note.

45.     As a result of Borrower's breach, Lender has suffered damages in the amount of the no less than $6,328,240.01 under the Loans, plus Extra Rate interest, reasonable costs and expenses, including attorneys' fees, in attempting to collect payment.

**COUNT III**
**BREACH OF CONTRACT – GUARANTY**
(GUARANTOR)

46.     Lender restates and incorporates paragraphs 1 through 45 as if fully set forth herein.

47.     For good and sufficient consideration, Guarantor, individually, independently and unconditionally issued the Guaranty in favor of Lender. Guaranty § 1.

48.     Lender has performed any and all conditions and obligations required of it under the Guaranty.

49.     Lender has made demand upon Guarantor to satisfy his obligations under the Guaranty. *See generally* Demand.

50.     Guarantor has materially breached his obligations under the Guaranty by failing to pay to Lender the outstanding amounts due and owing pursuant to the Loan Documents and the Guaranty.

51.     As a result of Guarantor's breach, Lender has suffered damages in the amount of the no less than $6,328,240.01 under the Loans, plus Extra Rate interest, reasonable costs and expenses, including attorneys' fees, in attempting to collect payment.

**WHEREFORE**, Plaintiff, CRESTMARK, a division of METABANK, NATIONAL ASSOCIATION, respectfully requests this Court to:

a.     enter judgment in favor of Lender and against Borrower and Guarantor, jointly and severally, for no less than $6,328,240.01 under the Loans, plus Extra Rate interest, reasonable costs and expenses, including attorneys' fees, in attempting to collect payment;

b.     appoint a Receiver to take possession of the Collateral; and

c.     grant Lender such other and further relief as the Court may deem just and appropriate.

DATED: January 14, 2022

/s/ Lauren J. Caisman
One of the Attorneys for Plaintiff

Jason J. DeJonker (*pro hac to be filed*)
Lauren J. Caisman (IL Bar No. 6312465)
Demetria L. Hamilton (*pro hac to be filed*)
Timothy Bow (*pro hac to be filed*)
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: 312-602-5000
Lauren.Caisman@bclplaw.com
Jason.DeJonker@bclplaw.com
Demetria.Hamilton@bclplaw.com
Timothy.Bow@bclplaw.com

# EXHIBIT

# A

## LOAN AND SECURITY AGREEMENT
("Agreement")

This Agreement dated September **13**, 2021, is an agreement between **CRESTMARK**, a division of **METABANK, NATIONAL ASSOCIATION** ("Crestmark"), and **SILVER BIRCH SYSTEMS LLC**, an Arizona limited liability company ("Borrower"). In this Agreement, Crestmark and Borrower are collectively the "Parties". Any person or entity who guarantees the obligations of Borrower (each a "Guarantor") is required to sign this Agreement. The Parties have the addresses shown on the schedule ("Schedule") which is attached to this Agreement. These are the addresses of the Parties for all purposes and may be changed by one party giving notice to the other party in writing of the new address.

1.     **PURPOSE.** The purpose of this Agreement, including the Schedule, is to set forth the terms and conditions of the loans from Crestmark to Borrower ("Loans") and the obligations of Borrower. The Schedule is part of this Agreement. Any and all promissory notes, including for term loans and/or capital expenditures (individually and collectively "Note") to be signed by Borrower, any guaranty(s), and any other documents now or hereafter signed by any of the Parties in connection with this Agreement, the Loans or any document issued by Crestmark or the bank holding the lockbox ("Lockbox Bank"), including subordination or intercreditor agreements, are also all part of this Agreement. All of the documents together are referred to collectively as the "Loan Documents".

2.     **LOANS; LOAN ADVANCES.**

A.     Any disbursement of money or advance of credit by Crestmark, including but not limited to amounts advanced for the payment of interest, fees, expenses and amounts necessary to protect, maintain and preserve Crestmark's Collateral under the Loan Documents ("Protective Disbursements"), is referred to collectively as an "Advance". Whether Crestmark makes an Advance is in Crestmark's sole discretion. If an Advance is made, it will be made in accordance with the advance formula set forth in the Schedule ("Advance Formula"); but not at any time to exceed the maximum amount set forth in the Schedule ("Maximum Amount"). Crestmark may choose to make Protective Disbursements in excess of the Maximum Amount or Advance Formula in its sole discretion. Each time Crestmark makes an Advance, including a Protective Disbursement, the Advance will be debited against an account in Borrower's name on Crestmark's books ("Loan Account"), and each payment will be credited against the Loan Account in the manner described in this Agreement.

B.     The total amount Borrower owes to Crestmark will be the aggregate of the Advances made by Crestmark, the expenses and fees set forth in the Schedule and any and all costs incurred by Crestmark (including reasonable attorney's fees), and interest at the rate set forth in the Note on all amounts and all other obligations of Borrower under the Loan Documents (collectively, the "Obligations" and/or "Indebtedness").

C.     Borrower must repay all Advances with respect to the Loans with interest, which is due monthly as specified in the Note, along with all other fees and expenses of Crestmark set forth herein or in the Schedule. Crestmark in its sole discretion may collect any Obligations due Crestmark by (i) directly applying any funds in the Lockbox Account, as defined in paragraph 5 below, to the Obligations (ii) directly applying funds from any Reserve Account, as defined in paragraph 3 below, to the Obligations, (iii) collecting the Obligations directly from Borrower; or (iv) otherwise collecting the Obligations. Borrower understands that all the Obligations are repayable at any time in full or in part upon demand by Crestmark. Crestmark may make demand for partial payments and such demand will not preclude Crestmark from demanding payment in full at any time.

D.     Borrower must comply with its representations, promises, covenants and reporting requirements set forth in this Agreement, in the Schedule and in the other Loan Documents. Borrower's failure to do any of the foregoing is a default ("Default"). The demand nature of the Obligations is not modified by reference to a Default in this Agreement or the other Loan Documents and any reference to a Default is for the purpose of permitting Crestmark to exercise its remedies for Default, including charging interest at the Extra Rate as defined and provided in the Note.

E.     The aggregate amount of all Advances, plus the expenses and fees set forth in the Schedule, any and all costs incurred by Crestmark (including reasonable attorney's fees), and interest at the rate set forth in the Note on all amounts advanced ("Loan Amount"), may not, at any time, exceed the Maximum Amount or the Advance Formula, and Borrower understands that if at any time it should owe more to Crestmark than the lesser of the Maximum Amount or the Advance Formula it must repay that amount immediately, whether or not demand to repay the whole of the Obligations has been made. Protective Disbursements must be immediately repaid whether or not the lesser of the Maximum Amount or the Advance Formula has been exceeded.

3.     **RESERVES.** If Crestmark believes in its sole discretion that the prospect for repayment of the Obligations is impaired or that its Collateral margin is insufficient, Crestmark may establish cash reserves and credit balances (collectively "Reserves") to protect its interests and the repayment of the Obligations. Reserves may be established by reducing the Advance Formula to achieve the target reserve level, withholding monies due Borrower from any payments Crestmark receives, from a cash payment from Borrower, or any other method Crestmark chooses. Crestmark shall hold these Reserves in a "Reserve Account". Any money in a Reserve Account, whether or not it is a cash reserve, will not earn interest for Borrower, and Crestmark may apply the funds in the Reserve Account to reduce the Obligations at any time Crestmark elects.

1



4.    **FEES AND EXPENSES.** In connection with the Loans there are several types of fees that may be charged and Borrower may be required to maintain a minimum loan balance. Such fees and requirements are set forth in the Schedule. In addition, all expenses of every kind incurred by Crestmark in connection with the Loans, any Advance, collection of the Obligations, inspection, and examination are to be paid by Borrower.

5.    **LOCKBOX.** Borrower must immediately notify all persons who are obligated on accounts ("Account Debtors") to direct all Account Debtors and any other person or party that is liable to Borrower (collectively a "Debtor") to remit all payments due Borrower to the lock box address or pursuant to the wire transfer or ACH instructions set forth in the Schedule ("Lockbox Account"). The remit to address on all documents related to the accounts, including invoices, purchase orders, or contracts ("Documents") must be the Lockbox Account. At Crestmark's request, all Documents must be marked by Borrower to show assignment to Crestmark, and Borrower must notify each Account Debtor by mail that the Account has been assigned to Crestmark and that all payments on the Account, whether made by mail or electronically or otherwise must be made payable to Borrower or Crestmark, at Crestmark's sole discretion, to the Lockbox Account or other address provided by Crestmark in writing. The language used in such notices shall be approved by Crestmark in writing. Crestmark may at any time and from time to time, and at its sole discretion, notify any Debtor or third party payee to make payments payable directly to Crestmark or to notify Debtor of the assignment to Crestmark. All expenses for notification of each Account Debtor will be paid by Borrower.

If notwithstanding the notice to Debtors, Borrower receives any funds from a Debtor, including any cash, checks, drafts or wire transfers from the collection, enforcement, sale or other disposition of the Collateral (defined below), whether derived in the ordinary course of business or not, or if Borrower receives any proceeds of insurance, tax refunds or any and all other funds of any kind, Borrower shall hold such funds in trust for Crestmark, shall not mix such funds received with any other funds, and shall immediately deposit such funds in the Lockbox Account in the form received. That means if the funds are received by mail, the Debtor checks will be sent to the Lockbox Account uncashed, and if the funds are received electronically, the funds will be transferred immediately to the Lockbox Account electronically. Crestmark will have sole possession and control over the Lockbox Account. The Lockbox Bank will process all deposits and Borrower has no right to the Lockbox Account, it belongs to Crestmark. Crestmark is the owner of all deposits in the Lockbox Account, and has no duty as to collection or protection of funds as long as it is not grossly negligent or commits actual fraud. All expenses plus any applicable administration and servicing fees of the Lockbox Account will be paid by Borrower.

6.    **LOAN ACCOUNT.** All of the Obligations which are owed by Borrower will be shown in the Loan Account and Borrower will receive a monthly statement either by mail, electronically or via access to the Crestmark online system at Crestmark's sole discretion. The statement is binding on Borrower, unless Borrower provides a written objection to Crestmark that is actually received by Crestmark within 15 business days of the time the statement is provided or made available to Borrower.

7.    **PAYMENTS.** Should a check or other credit instrument not be collected after Borrower has been given credit for such payment, then the credit will be reversed and a fee charged at Crestmark's then standard rate. Crestmark, at its sole discretion, may establish Reserves as set forth above or not apply a payment that it reasonably believes may be returned unpaid for any reason or disgorged due to a preference claim or garnishment, and in such event interest (as defined in the Note) and Maintenance Fees (as defined in the Schedule) will still be payable. In the event that any payment received by Crestmark is sought to be recovered by or on behalf of the payer (including a trustee in bankruptcy or assignee for the benefit of creditors), then Borrower agrees to immediately reimburse Crestmark on demand for any amount so recovered and all of Crestmark's expenses in connection with any such proceeding, including reasonable attorney's fees. This provision shall survive termination of this Agreement. Any payments received by Crestmark shall be applied to the Obligations in whatever order Crestmark determines in its reasonable discretion.

8.    **SECURITY INTEREST.**

A.    Borrower grants to Crestmark a security interest in all of its assets, now existing or hereafter arising, wherever located including all Accounts, Goods, Inventory, Equipment, Chattel Paper, Instruments, Investment Property, specifically identified Commercial Tort Claims, Documents, Deposit Accounts, Letter of Credit Rights, General Intangibles, Contract Rights, customer lists, furniture and fixtures, books and records and supporting obligations for any of the foregoing, and all proceeds of the foregoing ("Collateral"), to secure repayment of the Obligations ("Security Interest"). The Collateral also includes all monies on deposit with Crestmark, or on deposit in the Lockbox Account. All capitalized terms used in this Section 8A, which are not otherwise defined, shall have the meanings assigned to them in the Uniform Commercial Code as adopted in the state of Michigan ("UCC"). Without limiting the foregoing, "Accounts" will also mean and include any and all other forms of obligations now owed or hereafter arising or acquired by the Borrower evidencing any obligation for payment for goods of any kind, nature, or description, sold or leased, or services rendered, and all proceeds of any of the foregoing.

B.    Borrower gives Crestmark all of the rights of a secured party under the UCC. Borrower grants Crestmark the authority to file all appropriate documentation for Crestmark to perfect its Security Interest in the Collateral, including a UCC-1 financing statement listing the Collateral as "All assets of the Debtor, now existing and hereafter arising, wherever located," or similar terms, as well as UCC-3 amendments as may be required from time to time. All expenses of Crestmark relating to searching, filing or protecting the Security Interest are part of the Obligations.

C.    The Security Interest gives Crestmark rights with respect to the Collateral and the Security Interest and this Agreement imposes duties upon Borrower which relate to the Collateral. Some of the rights and duties are: (i) the right of Crestmark at any time to

2



notify any persons who may hold any part of the Collateral, such as Account Debtors and other debtors, of Crestmark's Security Interest. Borrower understands that Crestmark may verify Accounts with the Account Debtors; (ii) Borrower must cooperate with Crestmark in obtaining control of any Collateral in the possession of third persons, particularly Collateral consisting of Deposit Accounts, Investment Property, Letter of Credit Rights or other Collateral which is evidenced by electronic entries; (iii) except for the right of Borrower to sell its Inventory in the ordinary course of business, Borrower shall not sell or transfer any of the Collateral or grant any other security interest in the Collateral, except as Crestmark may specifically agree to in writing. Borrower remains liable to perform all of its obligations with respect to the Collateral such as the recognition of any warranties in Inventory sold and Crestmark is under no responsibility to perform any of the obligations of Borrower; and (iv) Borrower must notify Crestmark immediately if it knows that any Account Debtor disputes an Account, whether or not such disputes are deemed valid by Borrower.

9.     **POWER OF ATTORNEY.** Borrower irrevocably appoints Crestmark, or any person(s) designated by Crestmark, as its attorney-in-fact, which appointment is coupled with an interest and shall remain in full force and effect until all Obligations of Borrower to Crestmark have been fully satisfied and discharged, with full power, at Borrower's sole expense, to exercise at any time in Crestmark's reasonable discretion all or any of the following powers:

A.     Receive, take, endorse, assign, deliver, accept and deposit, in the name of Crestmark or Borrower, any and all cash, checks, commercial paper, drafts, remittances and other instruments and documents relating to the Collateral or the proceeds thereof.

B.     Change Borrower's address on all invoices and statements of Account mailed or to be mailed to Borrower's customers and to substitute thereon the address designated by Crestmark, to place legends on all invoices and statements of Account mailed or to be mailed to Borrower's customers, and to receive and open all mail addressed to Borrower, or to Borrower's trade name at Crestmark's address, or any other designated address.

C.     Upon and after the occurrence of a Default, to change the address for delivery of Borrower's mail to Crestmark's or an address designated by Crestmark. Borrower specifically authorizes Crestmark to sign any forms on behalf of Borrower to affect this change with the United States Postal Service or any third party and requests such change to be accepted.

D.     Upon and after the occurrence of a Default, to take or bring, in the name of Crestmark or Borrower, all steps, actions, suits or proceedings deemed by Crestmark necessary or desirable to effect collection of or other realization upon any Collateral.

E.     Execute on behalf of Borrower any UCC-1 and/or UCC-3 Financing Statement(s) and/or any notices or other documents necessary or desirable to carry out the purpose and intent of this Agreement, and to do any and all things reasonably necessary and proper to carry out the purpose and intent of this Agreement.

F.     To transfer any lockboxes belonging to Borrower to Crestmark at Crestmark's sole discretion.

G.     To initiate ACH transfers from Borrower's depository accounts.

H.     To endorse and take any action with respect to bills of lading covering any Inventory.

I.     Upon and after a Default, or at any time in the event that Borrower fails to do so within a reasonable time, execute, file and serve, in its own name or in the name of Borrower, mechanics lien or similar notices, or claims under any payment or performance bond for the benefit of Borrower.

J.     Upon and after a Default, or at any time in the event that Borrower fails to do so within a reasonable time, pay any sums necessary to discharge any lien or encumbrance on the Collateral, which sums shall be included as Obligations hereunder, and which sums shall accrue interest at the Extra Rate until paid in full.

10.     **REPRESENTATIONS.** Borrower makes the following representations and warranties to Crestmark and such representations and warranties must be true at all times until the Obligations are paid in full. If Borrower learns that a representation and warranty once made is no longer true, it has the duty to immediately notify Crestmark in writing:

A.     Borrower is in good standing under the laws of the state of its organization and is authorized to conduct business in any state that it conducts business. Borrower has the power and authority to enter into this Agreement, and the persons signing this Agreement, and all persons who sign any documents with Crestmark, have the appropriate authority. Borrower's organization identification number, state of organization, and addresses where it conducts business is as shown on the Schedule.

B.     Borrower's entry into the Loan Documents does not violate any agreement which Borrower has or which binds Borrower.

C.     The Loan Documents are fully enforceable against Borrower and the Collateral.

**D.**     There are no litigation or criminal charges pending or threatened against Borrower or Guarantor and neither Borrower nor Guarantor are in default of any order or judgment of any court or any governmental agency of any kind.  There are no unsatisfied liens or judgments pending against Borrower in any jurisdiction except as shown on the Schedule.

**E.**     The financial information furnished by Borrower to Crestmark has been prepared in accordance with generally accepted accounting principles, all financial statements are true and correct, and any projections of the business operations of Borrower that have been given or will be given to Crestmark in the future will be based upon Borrower's reasonable assumptions and estimates.

**F.**     Borrower is the owner of all of the Collateral and there are no other liens or claims against the Collateral, except the Security Interest of Crestmark or as shown on the Schedule.

**G.**     All of the Collateral is personal property and none of the Collateral will be permanently affixed to real estate.

**H.**     Borrower has filed and will file all federal, state, local and foreign tax returns that it is required to file and has paid and will pay all taxes and all other governmental charges as they become due.

**I.**     Borrower is able to pay its debts as they become due and has sufficient capital to carry on its business. Borrower's Obligations under this Agreement and the Loan Documents, including the obligation to repay the Loans and the grant of the Security Interest, do not render Borrower insolvent.

**J.**     Borrower only uses the fictitious names, d/b/a's, tradenames and tradestyles set forth on the Schedule (collectively the "Tradenames"), and Borrower  certifies that all sales and any and all business done in the name of the Tradenames are the sales and business of Borrower. Any and all checks, remittances or other payments received in the name of any of the Tradenames are Borrower's sole and exclusive property, and are subject to Crestmark's Security Interest hereunder.  Any and all authority given to Crestmark by Borrower in this Agreement or elsewhere to endorse Borrower's name on any checks, negotiable instruments or other remittances extends with equal and full force and effect to any checks, negotiable instruments, and other remittances received in the name of any Tradename.

**K.**     All Accounts assigned to Crestmark by Borrower are and will at all times be bona fide accounts arising from the sale of inventory or providing services, and are not subject to discounts, deductions, allowances, contra items, offset or counterclaim and are free and clear of all encumbrances of any kind whatsoever, except as disclosed to Crestmark in writing and approved by Crestmark in writing.

**L.**     Borrower's assignment of any Accounts to Crestmark pursuant to this Agreement will not at any time violate any federal, state and/or local law, rule or regulation, court or other governmental order or decree or terms of any contract relating to such Accounts.

**M.**     Borrower possesses all necessary trademarks, trade names, copyrights, patents, patent rights and licenses to conduct its business as now operated, without any known conflict with any trademarks, trade names, copyrights, patents and license rights of any other person or entity.

**N.**     Borrower's legal name as of the date hereof as it appears in its official filing with its state of organization is as set forth in the opening paragraph of this Agreement.  Borrower has not organized another entity or Tradename using Borrower's name or Tradename as set forth herein in any other jurisdiction.

**O.**     As to all of Borrower's Inventory and Equipment:

i.     The Inventory and Equipment are currently located only at the locations identified on the Schedule, or such other locations as consented to by Crestmark in writing;

ii.     All Inventory is now and at all times hereafter shall be of good and merchantable quality, free from defects, except as disclosed to Crestmark in writing;

iii.     The Inventory and Equipment are and shall remain free from all liens, claims, encumbrances, and security interests (except as held by Crestmark, and except as identified on the Schedule).

iv.     The Inventory is not now stored with a bailee, warehouseman or similar party unless such party has entered into a waiver letter in a form satisfactory to Crestmark.

**11.**     **BORROWER'S PROMISES.** Borrower makes the following promises to Crestmark and these promises are effective until the Obligations are fully paid:

**A.**     To pay all Obligations when due and perform all terms, conditions and obligations of the Loan Documents.

4



**B.**     To permit Crestmark, or its representatives, access to the Collateral on Borrower's premises and to Borrower's computer systems, books of account and financial records. Borrower will pay the cost of Field Examinations as specified in the Schedule.

**C.**     To notify Crestmark promptly of any litigation, administrative or tax proceeding or other action threatened or instituted against Borrower or Guarantor or its property, or of any other material matter which may adversely affect Borrower's financial condition.

**D.**     To pay when due all taxes, assessments and governmental charges, provided that Borrower has the right to contest the same as long as it has a cash reserve with Crestmark in an amount as determined by Crestmark in its sole discretion.

**E.**     To comply with the Financial Covenants described in the Schedule (if applicable).

**F.**     To maintain insurance on its business activities in such amount and in such form as Crestmark may from time to time require, and with respect to such insurance if so designated, Crestmark shall be named as "Lender Loss Payee" under the policy and receive evidence of the insurance.   All insurance which protects Crestmark shall have at least a 30-day notice to Crestmark prior to any cancellation.  With respect to the insurance, Borrower appoints Crestmark as its attorney-in-fact to negotiate any and all claims under all insurance policies and Crestmark also has the power to negotiate any payments on the insurance policies.

**G.**     To comply with all laws, ordinances and regulations or other requirements of any governmental authority or agency applicable to Borrower's business.

**H.**     To maintain and preserve all Collateral in good repair, working order and condition, and with respect to Accounts, pursue collections thereof.

**I.**     To provide Crestmark with evidence of ownership of any Collateral upon the request of Crestmark.

**J.**     To maintain a Loan Amount balance which shall not exceed the sum of Eligible Collateral times the corresponding rate in the Advance Formula.

**K.**     To, upon Crestmark's request and at Borrower's expense, duly execute and deliver, or cause to be duly executed and delivered, such further agreements, deposit account control agreements, documents and instruments, and do or cause to be done such further acts as may be necessary or proper to evidence, perfect, maintain and enforce the security interests of Crestmark in the Collateral and to otherwise effectuate the provisions or purposes of this Agreement.

**12.**     <u>**NEGATIVE COVENANTS**</u>.  Borrower agrees until the Obligations are paid in full, it will not:

**A.**     Change its state of organization or its name, or move its executive office or at any time adopt any assumed name without giving Crestmark at least 30 days prior written notice.

**B.**     Declare or pay any dividend or make any other distribution with regard to its equity or purchase or retire any of its equity without Crestmark's prior written consent, provided if it is taxed as an S Corporation or other "pass through" entity, Borrower may prior to a Default distribute profits to its equity holders in an amount necessary to enable such holders to pay personal, state and federal taxes directly attributable to the profits earned by Borrower for such year.

**C.**     Make any loan or guaranty or assume any obligation or liability, whether as borrower, guarantor, surety, indemnitor or otherwise (a "Borrower Obligation") (i) that would result in or create a Default, or (ii) that together with all other existing Borrower Obligations would exceed the "Borrower Obligation Threshold" set forth in the Schedule, without Crestmark's prior written consent.

**D.**     Enter into any transaction with its equity holders or any affiliates of Borrower except on terms at least as favorable as would be usual and customary in similar transactions if the person with whom the transaction is entered into was not related to Borrower.

**E.**     Release, redeem, purchase, or acquire any of its equity interests without the prior written consent of Crestmark.

**F.**     Default in the payment of any debt to any other person.

**G.**     Suffer or permit any judgment, decree or order not fully covered by insurance to be entered against Borrower or a Guarantor, or permit or suffer any warrant or attachment to be filed against Borrower, any Guarantor, or against any property or asset of Borrower or Guarantor.

**H.**     Transfer the ownership of any interest in Borrower without the prior written consent of Crestmark which shall not be unreasonably withheld.

**I.**     Sell any of the Collateral outside the normal course of its business without the prior written consent of Crestmark.



      J.     Purchase the stock or assets of any other entity without the prior written consent of Crestmark.

      **13.**    **FINANCIAL REPORTS.**  Borrower promises that until the Obligations are fully paid and this Agreement is terminated, it will keep its books and records in a manner satisfactory to Crestmark and Crestmark will have the right at any time to verify any of the Collateral, documentation or books and records of Borrower in whatever manner and as often as Crestmark deems necessary. Borrower will permit Crestmark, or its representatives, access to the Collateral and Borrower's premises and to Borrower's computer systems, books of account and financial records. Borrower will furnish to Crestmark the financial reports identified on the Schedule, certified to by the president or chief financial officer of Borrower and Borrower's certified public accountant, if applicable. All financial reports will be prepared in accordance with generally acceptable accounting principles and will be true and accurate.

      **14.**    **CRESTMARK'S REMEDIES.**  Crestmark has all the remedies available at law or in equity (including those under the UCC) in the event of a Default or if Borrower fails to pay the Obligations on demand, including but not limited to the following: to charge the Extra Rate; to notify Account Debtors to make the payments directly to Crestmark; to settle or compromise any disputed Account, sue on any Account and make any agreement to deal with the Accounts as if it were the owner; to offset any of Borrower's or Guarantor's funds under the control of Crestmark against the Obligations; and to require Borrower to gather up the Collateral and make it available to Crestmark for Crestmark to conduct public or private UCC foreclosure sales. Borrower grants to Crestmark a license or other right to use, without charge, Borrower's labels, patents, copyrights, trademarks, rights of use of any name, trade secrets, tradenames and advertising materials, or any property of a similar nature, as it pertains to the Collateral, in completing production of, advertising for sale and selling any Collateral, and Borrower's rights under all licenses and franchise agreements shall inure to Crestmark's benefit. If Crestmark should proceed against the Collateral and sell any of the Collateral on credit, Borrower will be credited on the Obligations only with the amount actually received by Crestmark and Borrower waives any and all provisions as to notice or a particular method of sale of any of the Collateral. Borrower will pay all expenses in connection with the assembly or sale of the Collateral. Crestmark does not have to incur its own expenses in realizing upon the Collateral, but all the expenses are for the account of Borrower. Borrower recognizes that at no time is Crestmark its agent in dealing with the Collateral, but Crestmark acts only in its own interest.

      **15.**    **CUMULATIVE RIGHTS.**  Crestmark's rights and remedies under this Agreement and all other agreements shall be cumulative. Crestmark shall have all other rights and remedies not inconsistent herewith as provided under the UCC, by law, or in equity. No exercise by Crestmark of one right or remedy shall be deemed an election, and no waiver by Crestmark of any Default on Borrower's part shall be deemed a continuing waiver. No delay by Crestmark shall constitute a waiver, election or acquiescence by it.

      **16.**    **LENDER ACTIONS.**  To the extent applicable law may impose duties on Crestmark to exercise remedies in a commercially reasonable manner, Borrower agrees that it is not commercially unreasonable for Crestmark: to fail to exercise remedies against any Collateral or any particular Account Debtor; to proceed against Account Debtors either directly or through collection agencies; to advertise disposition of Collateral through publications or media of general circulation; to hire professional auctioneers to dispose of Collateral; to dispose of Collateral in wholesale or retail markets; to disclaim warranties with respect to Collateral; or to obtain services of attorneys or other professionals. The foregoing is not an exhaustive list and nothing contained in the foregoing shall be construed to grant any rights to Borrower or to impose any duties on Crestmark that would not have been granted or imposed by this Agreement or by applicable law in the absence of this <u>Section 16</u>. Borrower agrees that under no circumstances is Crestmark the agent or representative of Borrower.

      **17.**    **APPLICATION OF PROCEEDS.**  Once collection efforts are commenced by Crestmark, any proceeds of sale or disposition of Collateral may be applied by Crestmark first to expenses authorized by this Agreement, including Crestmark's reasonable attorney's fees, which Borrower must pay, and the balance to payment of the Obligations in such manner as Crestmark may elect. Borrower and Guarantor remain liable for any deficiency.

      **18.**    **NOTICES.**  Any notice is effective by either party if sent in writing or facsimile with confirmation of receipt or by certified mail or personal delivery or expedited mail services to the addresses shown on the Schedule.

      **19.**    **MISCELLANEOUS PROVISIONS.**

      **A.**    This Agreement is binding upon and is for the benefit of Borrower and Crestmark, and their respective successors and assigns. However, under no circumstances may Borrower assign this Agreement or its rights and duties hereunder. Crestmark may assign this Agreement and its rights under the Loan Documents and Borrower will make payments to any such assignee if so directed.

      **B.**    Crestmark has the right at any time to assign, transfer, negotiate or sell participations in this Agreement or the Obligations or the rights of Crestmark hereunder. In connection with any assignment, Borrower consents to disclosure of any and all books, records, files, Loan Documents and all other documents in the possession or under the control of Crestmark.

      **C.**    No delay or failure of Crestmark in exercising any right or remedy will affect such right or remedy. No delay or failure of Crestmark to demand strict adherence to the terms of this Agreement will be deemed to waive Crestmark's rights to demand such adherence at any time in the future.



**D.**     The term "including" means "including, without limitation", and the term "includes" means "includes, without limitation". The word "will" shall be construed to have the same meaning and effect as the word "shall." The definitions of terms in this Agreement shall apply equally to the singular and plural forms of the terms defined.

**E.**     This Agreement and the other Loan Documents will be interpreted and determined under the laws of the state of Michigan without any regard to any conflict of laws provisions.

**F.**     Borrower, at Crestmark's request, will make, execute and acknowledge any and all further instruments or agreements necessary to carry out the intent of this Agreement and the other Loan Documents.

**G.**     This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile or electronic mail shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile or electronic mail to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

**H.**     Neither Crestmark nor its affiliates, directors, officers, agents, attorneys or employees are liable to Borrower or Guarantor or affiliates for any action taken or omitted by it or any of them under the Loan Documents, except for such liability as may be imposed by law for gross negligence or actual fraud, and no claim shall be made by Borrower or Guarantor or any of Borrower's affiliates, directors, officers, agents, or employees for any special or consequential damages or punitive damages arising out of, or related to, the Loan Documents or the transactions between the Parties.

**I.**     This Agreement and the other Loan Documents represent the complete Agreement between the Parties with respect to the subject matter of this Agreement, and there are no promises, undertakings, representations or warranties by Crestmark relative to the subject matter of this Agreement not expressly set forth in this Agreement or the other Loan Documents, and this Agreement supersedes all prior negotiations, agreements and understandings, oral or written. This Agreement and the other Loan Documents may be amended only in writing.

**J.**     If any provision of this Agreement is in conflict with any law or statute or is otherwise unenforceable, then the provision will be deemed null and void only to the extent of such provision and the provision will be deemed severable and the remainder of this Agreement shall be in full force and effect.

**K.**     Any payment made to Crestmark by either Borrower or Guarantor which is subsequently invalidated, declared fraudulent or preferential or otherwise set aside under any bankruptcy, state, federal or equitable law, then to the extent of such invalidity such payment will be deemed not to have been made and the obligation will continue in full force and effect. This provision shall survive termination of this Agreement.

**L.**     **No Lien Termination Without Release.** In recognition of among other things, Borrower's indemnification obligations and Crestmark's right to have its attorney's fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Borrower, Crestmark shall not be required to record any terminations or satisfactions of any of its liens on the Collateral unless and until Borrower and all guarantors of its Obligations have executed and delivered to Crestmark a general release in a form acceptable to Crestmark in its sole discretion. Borrower understands that this provision constitutes a waiver of its rights Borrower may have under §9-513 of the UCC.

**M.**     **USA Patriot Act Notification.** The following notification is provided to Borrower pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:

> **IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan or other extension of credit. We may ask for the name, address, date of birth, and other information that will allow us to identify all Borrowers, principals and owners. We may also ask to see your driver's license or other identifying documents.

**20.**     **INDEMNIFICATION.** Borrower hereby agrees to indemnify, defend and hold Crestmark and its executive committees, parent affiliates, subsidiaries, agents, directors, officers, participants, employees, agents and their successors and assigns (collectively "Indemnified Parties") harmless against any and all liabilities of any kind, nature or description and damages whether they are direct, indirect or consequential, including attorney's fees and other professionals and experts incurred or suffered directly or indirectly by Indemnified Parties or asserted against Indemnified Parties by anyone whosoever, including Borrower or Guarantor, which arise out of the Loan Documents or the relationship and transaction between the Parties. This provision shall survive the termination of this Agreement.



21.    **JOINT AND SEVERAL OBLIGATIONS.**  If more than one person or entity is named as Borrower in this Agreement, all Obligations, representations, warranties, covenants and indemnities of Borrower set forth herein and in the other Loan Documents shall be the joint and several obligations of such persons and/or entities.

22.    **JURISDICTION.**  BORROWER AND GUARANTOR AGREE THAT ANY ACTION TO ENFORCE BORROWER'S OR GUARANTOR'S OBLIGATIONS TO CRESTMARK SHALL BE PROSECUTED EITHER IN THE CIRCUIT COURT OF OAKLAND COUNTY MICHIGAN OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN (UNLESS CRESTMARK, IN ITS SOLE DISCRETION, ELECTS SOME OTHER JURISDICTION), AND BORROWER AND GUARANTOR SUBMIT TO THE JURISDICTION OF ANY SUCH COURT SELECTED BY CRESTMARK.  BORROWER AND GUARANTOR WAIVE ANY AND ALL RIGHTS TO CONTEST THE JURISDICTION AND VENUE OF ANY ACTION BROUGHT IN THIS MATTER AND BORROWER AND GUARANTOR MAY BRING ANY ACTION AGAINST CRESTMARK ONLY IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND OR THE FEDERAL COURT OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

23.    **WAIVER.**    ALL PARTIES, INCLUDING BORROWER AND GUARANTOR, EACH KNOWINGLY AND VOLUNTARILY WAIVE ANY CONSTITUTIONAL RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM, DISPUTE OR CONFLICT BETWEEN THE PARTIES OR UNDER THE LOAN DOCUMENTS AND AGREE THAT ANY LITIGATION SHALL BE HEARD BY A COURT OF COMPETENT JURISDICTION SITTING WITHOUT A JURY.  BORROWER AND GUARANTOR ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO REVIEW THE EFFECT OF THIS PROVISION WITH COUNSEL OF THEIR CHOICE.

24.    **RELEASE.**  BORROWER AND GUARANTOR RELEASE AND FOREVER DISCHARGE CRESTMARK, ITS AFFILIATES, OFFICERS, AGENTS, EMPLOYEES AND DIRECTORS FROM ANY AND ALL CLAIMS OF ANY KIND WHATSOEVER FROM THE BEGINNING OF TIME TO DATE OF THIS AGREEMENT.

The Parties have executed this Agreement as of the date and year first written above.

**CRESTMARK:**

**CRESTMARK, a division of METABANK, NATIONAL ASSOCIATION**

By: _Christy Morgan_
Christy Morgan, Vice President, Legal

**BORROWER:**

**SILVER BIRCH SYSTEMS LLC,**
an Arizona limited liability company

By: _Daniel T. Oshatz_
Daniel T. Oshatz, Chief Executive Officer

**GUARANTOR:**

The undersigned Guarantor by signing this Agreement agrees it has been read and understands the Agreement and Guarantor agrees to all of its terms.

_Daniel T. Oshatz_
Daniel T. Oshatz, Individually

8

## SCHEDULE TO LOAN AND SECURITY AGREEMENT

This Schedule is part of the Loan and Security Agreement dated September 13 , 2021 between:

> CRESTMARK, a division of METABANK, NATIONAL ASSOCIATION ("CRESTMARK")
> 726 HIGHLANDIA DRIVE
> BATON ROUGE, LOUISIANA 70810

AND

> SILVER BIRCH SYSTEMS LLC ("BORROWER")
> 4757 EAST GREENWAY ROAD
> PHOENIX, ARIZONA 85032

The following paragraph numbers correspond to paragraph numbers contained in the Agreement.

**2.**     **LOANS; LOAN ADVANCES.**

Advance Formula:  Advances of the Loan may be measured against a percentage of Eligible Accounts.

The Loan Amount may not exceed an amount which is the lesser of:

(a)     Ten Million and no/100 Dollars ($10,000,000.00) ("Maximum Amount"); or

(b)     Eighty-Five percent (85%) of Eligible Accounts (the "Advance Formula").

Crestmark in its sole discretion may raise or lower any percentage advance rate with respect to the Advance Formula.

**"Eligible Accounts"** means and includes those Accounts that:

(i)     have been validly assigned to Crestmark;
(ii)    strictly comply with all of Borrower's promises, warranties and representations to Crestmark;
(iii)   contain payment terms of not greater than 60 days from the date of invoice;
(iv)    are not more than 60 days past the date of invoice; and
(v)     are invoiced not later than 10 days from the date of service or sale.

Eligible Accounts shall not include the following:

(a)     Accounts with respect to which the Account Debtor is an officer, employee or agent of Borrower;
(b)     Accounts with respect to which services or goods are placed on consignment, guaranteed sale, or other terms by reason of which the payment by the Account Debtor may be conditional;
(c)     Accounts with respect to which the Account Debtor is not a resident of the United States or Canada; provided, however, all Accounts originating from the Province of Quebec shall be deemed ineligible;
(d)     Accounts with respect to which the Account Debtor is the United States or any department, agency or instrumentality of the United States; provided, however, that an Account shall not be deemed ineligible by reason of this clause (d) if the Borrower has completed all of the steps necessary, in the sole opinion of Crestmark, to comply with the Federal Assignment of Claims Act of 1940 (31 U.S.C. Section 3727) with respect to such Account;
(e)     Accounts with respect to which the Account Debtor is any state of the United States or any city, town, municipality, county or division thereof;
(f)     Accounts with respect to which the Account Debtor is a subsidiary of, related to, affiliated with, or has common shareholders, officers or directors with Borrower;
(g)     Accounts with respect to which Borrower is or becomes liable to the Account Debtor for goods sold or services rendered by the Account Debtor to Borrower;
(h)     Accounts where Crestmark has notified Borrower that, in Crestmark's sole discretion, the Account or Account Debtor is not acceptable to Crestmark;
(i)     All of the Accounts owed by an Account Debtor who is the subject of a bankruptcy, receivership or similar proceeding;
(j)     All of the Accounts owed by an Account Debtor where 20% or more of all of the Accounts owed by that Account Debtor are more than 60 days from the invoice date;
(k)     Accounts for which the services have not yet been rendered to the Account Debtor or the goods sold have not yet been delivered to the Account Debtor (commonly referred to as "pre-billed accounts");
(l)     COD, credit card sales and cash sales; and
(m)     Accounts that are disputed.

1



Crestmark will determine in its sole discretion whether any Collateral is eligible for an Advance, but no Collateral will be considered eligible unless the requirements set forth above are met. Regardless of whether any Collateral is eligible, it is still part of the Collateral securing the Obligations.

Prior to any request for an Advance Borrower must furnish to Crestmark invoices, credit memos, purchase orders, evidence of delivery, proof of shipment, timesheets or any other documents Crestmark requests, in its sole discretion, with respect to the Accounts that Borrower is tendering to Crestmark to support the Advance ("Account Documents"). Crestmark will endeavor to provide the requested Advance by the end of the next business day following the date it receives the request as long as the complete package of information for the request has been received by Crestmark by 3:00 p.m. Central Time on the date of the request for the Advance. All requests for funding will be subject to Crestmark's then standard fees for electronic funds transfer, wire transfers and check services.

Each time an Advance is made, the amount of the Obligations will be increased by the amount of the Advance. Three business days ("Clearance Days") after checks, ACH or wire transfers or other credit instruments are applied to a specific invoice, Crestmark will credit the Loan Account with the net amount actually received. On the date a collection is applied to a specific invoice Borrower will receive immediate credit on such funds in determining availability for Advances.

When Crestmark receives a payment from an Account Debtor, it will attempt to apply it against the appropriate Account Debtor and invoice according to the Account Debtor's remittance advice. If it is not clear which Account Debtor or invoice the payment is to be applied against, Crestmark may contact Borrower or the payor for assistance. Unless there is clear error, the application of payments by Crestmark is final.

4.    **FEES AND EXPENSES**.  The following fees will be paid by Borrower:

   *These fees are in addition to the fees set forth in the Note or elsewhere in the Agreement.*

   **Documentation Fee:**  In consideration of the extension of the Loan and the execution of this Agreement, Borrower will pay Crestmark a documentation fee of $500.00, which fee is fully earned as of the date hereof and is non-refundable.

   **Exit Fee:**  Borrower may elect to prepay the Obligations and/or terminate the Agreement but only upon the payment of all Obligations including the following exit fee ("Exit Fee"), as liquidated damages and not as a penalty:  (i) at any time during the first year of the Agreement, the Exit Fee will be 2% of the Maximum Amount; (ii) at any time during the second year of the Agreement, the Exit Fee will be 1% of the Maximum Amount; (iii) at any time during the third year of the Agreement, the Exit Fee will be 0.5% of the Maximum Amount; (iv) after the third anniversary date of the Agreement, the Exit Fee will be waived.  In the event that a Default has occurred and is continuing at the time Crestmark demands payment of the Obligations, the Exit Fee will be due and payable by Borrower.

   **Loan Fee:**  At closing of the Loan and annually on each automatic anniversary of the date of the Agreement, Borrower will pay Crestmark a Loan Fee in the aggregate amount of 0.5% of the Maximum Amount, which will be fully earned as of such date and not refundable in any event.

   **Lockbox Fee:**  Each month Borrower will pay all costs in connection with the Lockbox and the Lockbox Account, as determined by Crestmark from time to time.

   **Maintenance Fee:**  Each month Borrower will pay Crestmark a monthly maintenance fee ("Maintenance Fee") of 0.25% of the monthly average outstanding principal balance of the Loan for the preceding month.

   **Minimum Loan Balance:**  Borrower shall maintain an average outstanding principal balance of the Loan for each month in the amount of $3,500,000.00 ("Minimum Loan Balance").  If the actual average outstanding principal balance of the Loan in any month is less than the Minimum Loan Balance, Borrower must pay interest (as defined in the Note) and Maintenance Fees (as defined in the Schedule) for such month calculated on the Minimum Loan Balance.

   **Misdirected Payment Fee:**  Borrower will pay Crestmark a misdirected payment fee in an amount equal to 15% of the amount of any payment where said payment has been received by Borrower and not immediately delivered in kind or the proceeds paid by Borrower to Crestmark.

5.    **LOCKBOX.**

   The Lockbox Account means:
   Drawer #2674
   PO Box 5935
   Troy, MI  48007-5935

10. **REPRESENTATIONS.**

   **(A)**   Borrower is an Arizona limited liability company and its state organizational identification number is 1867225.

   **(D)**   List pending and threatened litigation and unsatisfied judgments: None.

   **(F)**   List Security Interests in the Collateral held by creditors other than Crestmark as permitted encumbrances: None.

   **(J)**   List Borrower's Tradenames: None.

   **(O)**   As to Inventory and Equipment - List Security Interests held by creditors other than Crestmark as permitted encumbrances: None.

11. **BORROWER'S PROMISES:**

   **E.**   FINANCIAL COVENANTS:  Borrower will maintain the following Financial Covenant, which will be tested on a quarterly basis:

   A **Minimum Positive Free Cash Flow** of greater than or equal to $100,000.00.  "Minimum Positive Free Cash Flow" shall mean as of the date of determination, net income plus depreciation and amortization less the sum of (a) distributions and/or dividends; (b) principal payments of debt; and (c) loans or advances made to employees, equity holders, officers, directors, related parties, or affiliates. This covenant will be tested quarterly using the prior three months of results.

   All of the financial covenants in this Agreement shall be determined in accordance with GAAP, unless otherwise provided.  "GAAP" means generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board that are applicable to the circumstances as of the date of determination and applied on a consistent basis.

12. **NEGATIVE COVENANTS.**

   **C.**   "Borrower Obligation Threshold" - $20,000.00.

13. **FINANCIAL REPORTS.**

   **Monthly Management Prepared Financial Statements:**  Each month, Borrower will deliver to Crestmark management prepared financial statements, balance sheets, and profit and loss statements for the month then ended, certified to by the president or chief financial officer of Borrower.  Such reports will set forth the financial affairs and true condition of Borrower for such time period and will be delivered to Crestmark no later than 30 days after the end of each month.

   **Annual Reviewed Financial Statements:**  Each fiscal year, Borrower will deliver to Crestmark reviewed financial statements, cash flow statements, balance sheets, and profit and loss statements for the fiscal year then ended, prepared by a certified public accountant acceptable to Crestmark, all without exceptions.  Such reports will set forth in detail Borrower's true condition for Borrower's fiscal year then ended, and will be delivered to Crestmark no later than 120 days after the end of each fiscal year.

   **Annual Reviewed Financial Statements (TeleEscrow, Inc.):**  Each fiscal year, Borrower will deliver to Crestmark reviewed financial statements, cash flow statements, balance sheets, and profit and loss statements for the fiscal year then ended, prepared by a certified public accountant acceptable to Crestmark, all without exceptions for TeleEscrow, Inc.  Such reports will be delivered to Crestmark no later than 120 days after the end of each fiscal year.

   **Projections:**  Upon request, Borrower shall deliver to Crestmark financial projections, including balance sheet, income statements, and statement of cash flows for the period requested.

   **Guarantors' Personal Financial Statements:**  Upon request, Guarantors will provide Crestmark with personal financial statements on forms supplied by Crestmark.  Such reports will set forth with detail Guarantors' financial affairs and the true financial condition of Guarantors.

   All financial statements are and will be prepared in accordance with GAAP applied on a consistent basis.

   **Accounts Receivable Aging and Accounts Payable Aging Reports:**  Borrower will furnish to Crestmark the following certified to by the president or chief financial officer of Borrower within the time periods set forth:



    (a)    **Accounts Receivable Reports:**  Monthly detailed Accounts Receivable Aging Reports no later than 15 days after the end of each month.

    (b)    **Accounts Payable Reports:**  Monthly summary Accounts Payable Aging Reports no later than 15 days after the end of each month.

    **Field Examinations:**  Borrower will reimburse Crestmark for the costs to perform annual field examinations of Borrower's books and records, assets and liabilities, to be performed by Crestmark's inspector, whether a Crestmark officer or an independent party with all expenses (whether for a Crestmark employee or otherwise), including all out of pocket expenses including, but not limited to, transportation, hotel, parking, and meals paid by Borrower.  Upon Default, the number of field examinations to be reimbursed by Borrower may be increased in Crestmark's sole discretion.  Field examinations are performed for Crestmark's internal use and Crestmark has no obligation to provide Borrower or Guarantor with the results of the examination or copies of any reports or work papers in whole or in part.

    **Customer Lists:**  Upon request, Borrower will deliver to Crestmark detailed customer lists showing the customer's name, address, phone number and any other information Crestmark reasonably requests.

    **Tax Deposit Evidence:**  Upon request, Borrower will submit weekly payroll summaries and evidence of tax payments together with copies of bank statements from which the funds are impounded.

    **Tax Returns:**  Upon request, Guarantor and Borrower will each provide Crestmark with annual tax returns.

    **Other Information:**  Borrower and Guarantor will also deliver to Crestmark such other financial statements, financial reports, documentation, tax returns and other information as Crestmark requests from time to time.

18.    **NOTICES.**  Addresses for Notices are as set forth at the beginning of this Schedule.

**CRESTMARK:**                             **BORROWER:**

**CRESTMARK, a division of METABANK,**        **SILVER BIRCH SYSTEMS LLC,**
**NATIONAL ASSOCIATION**             an Arizona limited liability company

By: _Christy Morgan_                  By: _Daniel T. Oshatz_
    Christy Morgan, 1st Vice President, Legal        Daniel T. Oshatz, Chief Executive Officer

4

# EXHIBIT

# B

**PROMISSORY NOTE**
(Line of Credit)

**Principal Amount $10,000,000.00**                                                          **Baton Rouge, Louisiana**

**Dated: September** _13_ **, 2021**

This Promissory Note (Line of Credit) ("Note") is made by the Borrower who has signed this Note. The Borrower promises to pay to the order of **CRESTMARK**, a division of **METABANK, NATIONAL ASSOCIATION** ("Crestmark"), ON DEMAND, at its offices located at 726 Highlandia Drive, Baton Rouge, Louisiana 70810 or at such other place as Crestmark or the person that then holds this Note designates in writing, the principal amount set forth above or such lesser or greater amount as may then be due under the Agreement (as defined below), plus interest, fees and expenses as hereinafter provided. All payments that are made must be made in lawful money of the United States of America in immediately available funds. Borrower does not have any right to an offset, deduction, or counterclaim from the amount due.

This Note is referred to in and was delivered pursuant to the Loan and Security Agreement ("Agreement") of even date between Borrower and Crestmark under which Advances, repayment and further Advances may be made from time to time, pursuant to the provisions of the Agreement. Reference is made to the Agreement for additional terms relating to this Note and the security given for this Note. Any capitalized terms used in this Note, if not defined in this Note, will have the meanings assigned to such terms in the Agreement.

The outstanding principal balance of this Note will bear interest based upon a year of 360 days with interest being charged for each day the principal amount is outstanding including the date of actual payment. The interest rate will be a rate which is equal to 2.88% in excess of that rate shown in the Wall Street Journal as the prime rate ("Effective Rate"). Interest on this Note will change with each change in the prime rate so published. If at any time Crestmark either abandons the use of the Wall Street Journal prime rate or the Wall Street Journal prime rate is no longer published, then Crestmark will establish a similar replacement rate in its sole discretion. Notwithstanding the foregoing, at no time will the Effective Rate be less than 6.13% per annum.

Borrower must pay interest on the principal amount which is outstanding each month in arrears commencing on the first day of the month following the funding of the transaction, and continuing on the first day of each month thereafter until the Indebtedness is fully paid. If the Agreement so provides, interest will also be payable at the same rate on all other sums constituting Indebtedness. If any payment is due on a day which Crestmark is not open for business, then payments will be made on the next business day. Payments will be applied in the manner provided in the Agreement. If Borrower at any time pays less than the amount then due, Crestmark may accept such payment, but the failure to pay the entire amount due is a Default. The (i) failure of Borrower to comply with the provisions of the Agreement or (ii) failure to pay the Indebtedness following demand will permit Crestmark to charge the Extra Rate. The "Extra Rate" shall mean the Effective Rate plus 8% per annum.

Should Borrower make any payment by mail, the payment must be actually received by Crestmark before the payment is credited but payment is still subject to the Clearance Days as defined in the Schedule to the Agreement. Borrower assumes all risk resulting from non-delivery or delay, in delivery of any payment no matter how the payment is delivered.

If Borrower elects to prepay this Note and/or terminate the Agreement, Borrower may do so, but only upon payment of all the Indebtedness, including the Exit Fee set forth in the Schedule.

It is the intent of the parties that the rate of interest and other charges to Borrower under this Note shall be lawful; therefore, if for any reason the interest or other charges payable hereunder are found by a court of competent jurisdiction, in a final determination, to exceed the limit Crestmark may lawfully charge Borrower, then the obligation to pay interest or other charges shall automatically be reduced to such limit and, if any amount in excess of such limit shall have been paid, then such amount shall be credited to the outstanding principal balance of this Note, or if no such amount is outstanding, refunded to Borrower.

Borrower waives any obligation of Crestmark to present this Note for payment or to give any notice of nonpayment or notice of protest and any other notices of any kind. The liability of the Borrower is absolute and unconditional, without regard to the liability of any other party.

If this Note is signed by two or more parties, the obligations and undertakings under this Note shall be that of all and any two or more jointly and also each severally.

**BORROWER**

**SILVER BIRCH SYSTEMS LLC,**
an Arizona limited liability company

By: _____
        Daniel T. Oshatz, Chief Executive Officer

# EXHIBIT

# C

## PERSONAL GUARANTY

This Personal Guaranty ("Guaranty") is made on September __13__, 2021 by **DANIEL TODD OSHATZ** ("Guarantor") in favor of **CRESTMARK**, a division of **METABANK, NATIONAL ASSOCIATION** ("Crestmark") to induce Crestmark to make a loan and/or extend or continue credit to **SILVER BIRCH SYSTEMS LLC**, an Arizona limited liability company ("Borrower") and because Guarantor has determined that executing and delivering this Guaranty is in Guarantor's interest and to Guarantor's financial benefit. Any capitalized terms used in this Guaranty, if not specifically defined in this Guaranty, will have the meanings set forth in the Loan Documents (as defined in <u>Section 3</u> below).

1.     <u>**Guaranty.**</u>  **Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Crestmark:** (a) the full, prompt and unconditional payment when due of all existing and future obligations and indebtedness of the Borrower to Crestmark, including but not limited to the Indebtedness as defined in the Loan and Security Agreement ("Agreement") between Crestmark and Borrower (as may be amended) and all principal, interest and fees under any and all related notes, as they may be amended or restated and whether on demand, at maturity, pursuant to mandatory or optional prepayments, by acceleration or otherwise; and (b) the punctual and faithful performance and observation by Borrower of all duties, agreements, covenants, representations and obligations of Borrower contained in the Loan Documents (as defined in <u>Section 3</u>).

2.     <u>**Absolute, Unconditional and Continuing Obligation.**</u>  **This Guaranty is an absolute, continuing, unconditional, unlimited and irrevocable guaranty.** Guarantor will not be relieved from any obligations under this Guaranty until this Guaranty is terminated in accordance with <u>Section 14</u>. The obligations and liabilities of Guarantor will continue notwithstanding any defect in the genuineness, validity or enforceability of the Indebtedness or the Loan Documents, or any other circumstances which might otherwise constitute a legal or equitable discharge or defense of the liabilities of a surety or guarantor or which might otherwise limit recourse against Guarantor. This is a guarantee of payment and not of collection.

3.     <u>**The Loan Documents.**</u>  The Agreement, all related notes, and all other related documents now existing or hereafter arising and executed in connection with the loan, including all amendments and restatements thereto (collectively, "<u>Loan Documents</u>"), are incorporated into and made a part of this Guaranty by reference.

4.     <u>**Continuation of Liability.**</u>  The liability and obligations of Guarantor will in no way be affected, impaired, diminished or released by any action or inaction whatsoever other than the indefeasible payment in full and in cash of the Indebtedness.

5.     <u>**Unconditional Waiver of all Defenses.**</u>  **Guarantor unconditionally, absolutely and irrevocably waives each and every defense that under principles of guaranty or suretyship law would otherwise operate to impair or diminish the liability of Guarantor for the Indebtedness.**

6.     <u>**Immediate Recourse/Exercise of Rights by Crestmark.**</u>  At any time when the Indebtedness, or any portion thereof, has not been paid when due (whether by acceleration or otherwise), Crestmark can require that Guarantor pay Crestmark the amounts owing on this Guaranty immediately. Crestmark is not required to collect first from Borrower, any collateral, any other guarantor or any other person. No delay or stay in any acceleration of the Indebtedness, as against the Borrower, due to the application of any bankruptcy, insolvency or other law or proceeding will be effective under this Guaranty, and Guarantor agrees to immediately pay the amount of the Indebtedness that would be due and payable but for such delay or stay. All rights, powers and remedies of Crestmark hereunder and under the Loan Documents are cumulative and not alternative and shall be in addition to all rights, powers and remedies given to Crestmark by law and by agreement.

7.     <u>**Subordination/Subrogation.**</u>  In the event that Guarantor becomes obligated to pay any sums to Borrower, or in the event that Borrower or any subsequent owner of any Collateral is now or hereafter becomes indebted to Guarantor other than for customary salary and bonuses (collectively, "Debt"), the Debt will at all times be subordinate as to lien, payment and all other respects, to the Indebtedness, and Guarantor will not, among other things, accept any payment from Borrower with respect to the Debt without Crestmark's prior written consent. Furthermore, until the Indebtedness is indefeasibly paid in full and in cash, and the Agreement is terminated, Guarantor hereby absolutely, irrevocably and unconditionally waives all rights Guarantor may have, at law or in equity, to seek or claim subrogation. Crestmark has no duty to enforce or protect any rights which the Guarantor may have against Borrower or any other person, and Guarantor assumes full responsibility for enforcing and protecting such rights.

8.     <u>**Representations and Warranties.**</u>  Guarantor represents, warrants and covenants to Crestmark that: (a) Guarantor has completely read and understands the Loan Documents and agrees to all those portions which apply to Guarantor; (b) Guarantor was provided an opportunity to review the Loan Documents with its legal counsel; (c) any financial statements of Guarantor furnished to Crestmark are true and correct and include all contingent liabilities of Guarantor; (d) since the date of any financial statements furnished to Crestmark, no material adverse change has occurred in the financial condition of Guarantor; (e) there are no pending or

1



threatened legal proceedings or judgments against Guarantor, and no federal or state tax liens have been filed or threatened against Guarantor; and (f) Guarantor is not in default or claimed default under any agreement for borrowed money.  Guarantor agrees to immediately give Crestmark written notice of any material adverse change in its financial condition.

**9.**    **Expenses.**  Guarantor agrees to pay all expenses (including attorneys' fees) incurred by Crestmark in connection with the enforcement of Crestmark's rights under the Loan Documents, this Guaranty, and the collection of the Indebtedness.

**10.**    **Transfer of Assets.**  Guarantor further agrees that until the Indebtedness is indefeasibly paid in full, and in cash, and the Agreement is terminated, Guarantor will not, without Crestmark's prior written consent: (i) make any voluntary transfer of any of Guarantor's assets which would have the effect of materially diminishing Guarantor's present net worth or (ii) guaranty the debts or obligations of any other person or entity.

**11.**    **Reinstatement.**  This Guaranty will continue to be effective or will be automatically reinstated, as the case may be, if at any time payment of all or part of the Indebtedness is rescinded or must otherwise be restored or returned by Crestmark, including in connection with Borrower's bankruptcy or insolvency.

**12.**    **Joint and Several Liability.**    The term "Guarantor" shall mean each person executing this Guaranty, each individually and together collectively, and the obligations of Guarantor and any other guarantor executing a guaranty of all or any portion of the Indebtedness will be joint and several.

**13.**    **Assignability/Binding Effect.**  This Guaranty shall be assignable by Crestmark without notice to Guarantor and shall inure to the benefit of Crestmark and to any subsequent successors and assigns.  In the event of the death of Guarantor, this Guaranty shall continue in effect against the estate of Guarantor.

**14.**    **Termination.**  Notwithstanding anything contained herein to the contrary, the liability of Guarantor will be terminated only in the event that (i) Borrower or Guarantor has indefeasibly paid Crestmark in cash and in full the Indebtedness and (ii) the Agreement is terminated.

**15.**    **Severability.**  If any provision of this Guaranty is in conflict with any statute or rule of law or is otherwise unenforceable for any reason, then that provision will be deemed null and void to the extent of the conflict or unenforceability and will be deemed severable, but it will not invalidate any other provision of this Guaranty.

**16.**    **Complete Agreement.**  This Guaranty is the final, complete and exclusive expression of the agreement between Guarantor and Crestmark with respect to the subject matter of this Guaranty.  This Guaranty cannot be modified or amended except in a writing signed by both Guarantor and Crestmark.

The Guarantor executes this Guaranty as of the day and year first above written.

GUARANTOR:

_____, Individually
Signature

DANIEL T OSHATZ
Print Name

2

# EXHIBIT D

# iLien Cover Page

Date Printed:  09/13/2021

Debtor:

Silver Birch Systems LLC
4757 EAST GREENWAY ROAD
PHOENIX, AZ  85032

New/Routine:  New
Broker:
User:  RB
Pre/Post:  Pre
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #:  80434535
Order Confirmation #:  82398037

UserID:  307873
UserName:  RACHEL BOWDEN
Number of Collateral Pages Attached:  0

Transaction Type:  Original
Jurisdiction:  AZ, Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   19399 - Crestmark, a

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

82398037

AZAZ

File with: Secretary of State, AZ

Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 202100467237
File Date   : 13-Sep-2021

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Silver Birch Systems LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4757 EAST GREENWAY ROAD | PHOENIX | AZ | 85032 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Crestmark, a division of MetaBank, National Association | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 726 Highlandia Drive | Baton Rouge | LA | 70810 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or hereafter acquired, and wherever located.

NOTICE - PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN.

NOTWITHSTANDING DEBTOR'S AGREEMENT TO NOT FURTHER ENCUMBER THE COLLATERAL, IN THE EVENT THAT ANY ENTITY RECEIVES OR COLLECTS ANY OF THE COLLATERAL (INCLUDING BUT NOT LIMITED TO ACCOUNTS, INVENTORY, CHATTEL PAPER, GENERAL INTANGIBLES, INSTRUMENTS OR INVESTMENT PROPERTY) OR ITS PROCEEDS, SUCH ENTITY IS REQUIRED TO IMMEDIATELY DELIVER SUCH COLLATERAL AND ITS PROCEEDS TO SECURED PARTY, AND THE FAILURE TO DO SO MAY CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S RIGHTS AND REMEDIES WITH RESPECT TO THE COLLATERAL AND DEBTOR.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
82398037          New

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# EXHIBIT

# E

**2022-000-1183-5**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**ARIZONA**
**SECRETARY OF STATE**
**12/21/21 13:28**
**F I L E D**

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC   1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

2238 47584
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Arizona
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME Silver Birch Systems LLC | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 4757 E Greenway Road | CITY Phoenix | STATE AZ | POSTAL CODE 85032 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME Oshatz | FIRST PERSONAL NAME Daniel | | ADDITIONAL NAME(S)/INITIAL(S) Todd | SUFFIX |
| 2c. MAILING ADDRESS 22 Club Pointe Drive | CITY White Plains | STATE NY | POSTAL CODE 10605 | COUNTRY USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME Corporation Service Company, As Representative | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS PO BOX 2576 UCCSPREP@cscinfo.com | CITY Springfield | STATE IL | POSTAL CODE 62708 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
All now owned and hereafter acquired accounts; chattel paper; deposit accounts; contract rights; letter of credit rights; instruments; payment and general intangibles; goods; inventory; equipment and fixtures; investment property; and all books and records relating to all of the foregoing property, including, without limitation, all computer programs; and all proceeds of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES. IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTORS ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
2238 47584

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**2021-007-0010-6**

**ARIZONA
SECRETARY OF STATE
12/31/21 11:07
F I L E D**

### UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Wolters Kluwer Lien Solutions 800-331-3282**

B. E-MAIL CONTACT AT FILER (optional)
**CTLSWebAck@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Lien Solutions
P.O. Box 29071
Glendale, CA  912099071
USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME:  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **SILVER BIRCH SYSTEMS LLC** | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **4757 East Greenway Road** | **Phoenix** | **AZ** | **85032** | **USA** |

2. DEBTOR'S NAME:  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **C T Corporation System, as representative** | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **330 N Brand Blvd, Suite 700,Attn: SPRS** | **Glendale** | **CA** | **91203** | **USA** |

4. COLLATERAL:  This financing statement covers the following collateral:
**All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of debtor's books and records relating to any of the foregoing.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**84170124**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)     International Association of Commercial Administrators (IACA)

AZ UCC1 v.1.2021.0903.20

**2022-000-1545-7**

**ARIZONA**
**SECRETARY OF STATE**
**01/06/22 09:58**
**F I L E D**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Wolters Kluwer Lien Solutions 800-331-3282**

B. E-MAIL CONTACT AT FILER (optional)
**CTLSWebAck@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Lien Solutions**
**P.O. Box 29071**
**Glendale, CA  912099071**
**USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **SILVER BIRCH SYSTEMS LLC** | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **4757 E GREENWAY RD** | **Phoenix** | **AZ** | **85032** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **AMTEL CONSULTING INC.** | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **4757 E GREENWAY RD** | **Phoenix** | **AZ** | **85032** | **USA** |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **C T Corporation System, as representative** | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **330 N Brand Blvd, Suite 700; Attn: SPRS** | **Glendale** | **CA** | **91203** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

All personal property of every kind and nature, including, without limitation, all accounts, contract rights, rights to the payment of money, insurance claims and proceeds, chattel paper, electric chattel paper, documents, instruments, securities and other investment property, deposit accounts, supporting obligations of every nature, and general intangibles, including without limitation, customer lists, and all books and records related thereto, and all recorded data of any kind and any nature, regardless of the medium of recording; together with, to the extent not listed above as the original collateral, all substitutions and replacements for and products of any of the foregoing property, and together with proceeds of any and all of the foregoing property.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**84249375**

Arizona Uncertified Copy Secretary of State

2022-000-1545-7

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME

**SILVER BIRCH SYSTEMS LLC**

OR 18b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME **AW COMMUNICATIONS, INC** | | | |
|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS **4757 E GREENWAY RD** | CITY **Phoenix** | STATE **AZ**  POSTAL CODE **85032** | COUNTRY **USA** |

20. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME **ROCKY MOUNTAIN EUROVEST, LLC** | | | |
|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS **4757 E GREENWAY RD** | CITY **Phoenix** | STATE **AZ**  POSTAL CODE **85032** | COUNTRY **USA** |

21. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME **VOIP ONE SOLUTIONS INC** | | | |
|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS **4757 E GREENWAY RD** | CITY **Phoenix** | STATE **AZ**  POSTAL CODE **85032** | COUNTRY **USA** |

22. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

23. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

24. MISCELLANEOUS:

Arizona Uncertified Copy / Secretary of State

2022-000-1545-7

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME

**SILVER BIRCH SYSTEMS LLC**

OR

18b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

19a. ORGANIZATION'S NAME

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| **OSHATZ** | **DANIEL** | **TODD** | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **22 CLUB POINTE DR** | **White Plains** | **NY** | **10605** | **USA** |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

20a. ORGANIZATION'S NAME

OR

20b. INDIVIDUAL'S SURNAME    FIRST PERSONAL NAME    ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

20c. MAILING ADDRESS    CITY    STATE    POSTAL CODE    COUNTRY

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

21a. ORGANIZATION'S NAME

OR

21b. INDIVIDUAL'S SURNAME    FIRST PERSONAL NAME    ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

21c. MAILING ADDRESS    CITY    STATE    POSTAL CODE    COUNTRY

22. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

22a. ORGANIZATION'S NAME

OR

22b. INDIVIDUAL'S SURNAME    FIRST PERSONAL NAME    ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

22c. MAILING ADDRESS    CITY    STATE    POSTAL CODE    COUNTRY

23. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

23a. ORGANIZATION'S NAME

OR

23b. INDIVIDUAL'S SURNAME    FIRST PERSONAL NAME    ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

23c. MAILING ADDRESS    CITY    STATE    POSTAL CODE    COUNTRY

24. MISCELLANEOUS:

Arizona Uncertified Copy of State

# EXHIBIT

# F

Jason J. DeJonker
Direct: (312) 602-5005
Fax: (312) 6987405
jason.dejonker@bclplaw.com

BRYAN
CAVE
LEIGHTON
PAISNER 

BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street  Suite 4300
Chicago  IL  60601 3315
T: +1 312 602 5000
F: +1 312 602 5050
www.bclplaw.com

January 12, 2022

**VIA OVERNIGHT EXPRESS AND E-MAIL**

Silver Birch Systems LLC
c/o Richard A. Schurr, Esq.
100 Almeria Ave. #340
Coral Gables, Florida 33134
rick@richardschurr.com
bonnie@richardschurr.com

Daniel T. Oshatz (Guarantor)
22 Club Pointe Drive
White Plains, New York 10605
dan@silverbirchsystems.com

> **Re:   *Notice of Demand For Payment and Acceleration***
> ***Notice of Defaults and Demand for Cure***
>
> Line of credit loans in the aggregate principal amount of up to $10,000,000.00 (the "***Loans***") made by Crestmark, a division of MetaBank, National Association ("***Lender***" or "***Crestmark***") to Silver Birch Systems LLC, an Arizona limited liability company ("***Borrower***")[1]

Dear Mr. Oshatz:

Our Firm represents Lender in connection with the Loans.  Reference is made to the following documents, each dated September 13, 2021 unless otherwise indicated, and each of which evidence, secure, or otherwise relate to the Loans:

- That certain Promissory Note (as may have been extended, amended, renewed, and/or assigned, the "***Note***") in the original principal amount of up to $10,000,000.00 made by Borrower and payable to the order of Lender;

- That certain Loan and Security Agreement, between Borrower and Lender (as may have been extended, amended, renewed, and/or assigned, the "***Loan Agreement***"); and

- That certain Personal Guaranty of Borrower (as may have been extended, amended, renewed, and/or assigned, the "***Guaranty***") executed by Daniel Todd Oshatz ("***Guarantor***") for the benefit of Lender.

The above-described documents, together with all other documents or instruments evidencing and/or securing the Loans, as amended, modified, supplemented, renewed, reaffirmed, and/or otherwise modified at any time, and from time to time, are herein collectively referred to as the "***Loan Documents.***" Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Documents.

---

[1]    To the extent Borrower or Guarantor has filed for protection under chapter 7 or chapter 11 of the Bankruptcy Code, this letter is not an act to collect, assess, or recover a claim against you, nor is this letter intended to violate any provisions of the Bankruptcy Code.  Any and all claims Lender asserts against any bankrupt Borrower or Guarantor will be properly asserted in compliance with the Bankruptcy Code in the applicable bankruptcy case.

Silver Birch Systems LLC
Daniel Oshatz
Page 2



BRYAN
CAVE
LEIGHTON
PAISNER

Pursuant to the Loan Agreement, Lender required Borrower to, *inter alia*, establish a Lockbox Account into which Borrower would transfer all proceeds of any Accounts. In conjunction with this requirement, Lender and Teleescrow, Inc. ("**Teleescrow**") are parties to that certain Payment Services Agreement, dated September 16, 2021 (the "**Payment Services Agreement**"), pursuant to which Teleescrow purportedly holds funds from customer prepayments in escrow for, and remits such funds to, Lender for payment of the Loan. Despite its initial claim that Teleescrow would hold the proceeds of Accounts in escrow, segregated from other monies, Lender has subsequently learned that such proceeds of Accounts are actually held in commingled bank accounts in the name of Teleescrow in violation of the Loan Documents.

As part of Borrower and Teleescrow's businesses, customers of Borrower (and Account Debtors under the Loan Agreement) would prepay amounts owed to Borrower (via payment and/or transfer of funds to Teleescrow) for phone services. To repay the Loans, Borrower and Teleescrow agreed to make funds available as the underlying Accounts came due. Under the Loan Agreement,

> Borrower must repay all Advances with respect to the Loans with interest, which is due monthly as specified in the Note, along with all other fees and expenses of Crestmark set forth [in the Loan Agreement] or in the Schedule. Crestmark may in its sole discretion collect any Obligations due Crestmark by (i) directly applying funds in the Lockbox Account, as defined in paragraph 5 [of the Loan Agreement], to the Obligations....

From September through November 2022, Borrower and Teleescrow transferred funds from the Lockbox Account at Teleescrow to Lender. However, beginning in December 2022, Teleescrow paid Lender in smaller amounts and less frequently. As of December 25, 2021, Teleescrow and Borrower completely ceased all payments to Lender. On information and belief and based on documentation provided by Teleescrow, such payments and transfers to Lender ceased despite the fact that Borrower and/or Teleescrow continued to hold prepayments from Accounts Debtors on Accounts. Despite a number of unanswered inquiries to Teleescrow and Borrower, Lender has not received any payments on the Loans from Borrower or Teleescrow on account of the Loans since December 24, 2021.

### DEMAND AND NOTICE OF ACCELERATION

Lender hereby gives you notice of the outstanding indebtedness due under the Note, which, through the date hereof, is approximately as follows:

| | |
|---|---|
| Principal Balance | $6,075,165.40 |
| Accrued Interest | $52,032.11 |
| Lockbox Forwarding Fees | $925.50 |
| UCC Release | $117.00 |
| Early Exit Fee | $200,000.00 |
| **TOTAL:** | **$6,328,240.01** |

In light of the aforementioned Defaults and as otherwise provided under the Loan Agreement and the Note, Lender hereby demands immediate payment of the Loans (including all interest, fees, and other costs due and owing under the Loan Documents), with all other amounts due and owing from Borrower

Silver Birch Systems LLC
Daniel Oshatz
Page 3



and Guarantor to Lender, as set forth above.  In addition to the foregoing, Lender notes that the outstanding principal balance of the Debt will accrue interest at the Effective Rate plus the Extra Rate of 8% (the "**Default Rate**") from the date hereof until the Loans are paid in full.  In addition to interest, late charges, expenses (including Lender's costs of collection, attorneys' fees and expenses, etc.), and other amounts have, and will continue to after the date hereof, become due and payable under the Loan Documents.  Lender will pursue all such obligations under the Loan Agreement (including, *inter alia*, Section 14 thereof) and the Guaranty (including, *inter alia*, Section 9 thereof).  Lender reserves the right to accept payments made after the date of this notice even though such payments are not offered as, or are insufficient to, cure defaults described herein or reinstate the Loans pursuant to the provisions of applicable law.  Lender may apply such payments in the order provided in the Loan Agreement or any of the other Loan Documents.

In addition, until such time as the Loans are repaid in full, Lender hereby notifies Borrower that it is exercising its discretion pursuant to Section 2(A) of the Loan Agreement to cease any further Advances to Borrower.  Lender furthers advises Borrower and Guarantor that, in accordance with the Note, if the Loans are not paid in full, Lender may exercise, in its discretion, any and all other rights and remedies under the Loan Documents, at law, or in equity.

## NOTICE OF DEFAULTS

In addition to the Demand and Notice of Acceleration set forth above, based on Lender's knowledge and belief, certain other Defaults under the Loan Documents have occurred and are continuing as a result of, among other things:

- As referenced in that certain Notice of Default, sent by Lender to Borrower on January 4, 2022, Borrower has failed to deliver to Crestmark certain monthly management-prepared financial statements, balance sheets, and profit and loss statements, for the months ended September 30, 2021, October 31, 2021, and November 30, 2021, as required under Section 13 of the Schedule to the Loan Agreement (collectively, the "**Required Reports**").

- Borrower's failure to deliver to Lender updated accounts receivables aging and accounts payable aging reports, as required under Section 13 of the Schedule to the Loan Agreement.

- As evidenced by UCC statement numbers 2022-000-1183-5 (filed 12/21/21), 2021-007-0010-6 (filed 12/31/21), and 2022-000-1545-7 (filed 1/6/22) (collectively, the "**Subsequent UCCs**"), Borrower's granting of blanket liens on the Collateral in excess of the Borrower Obligation Threshold of $20,000.00, in violation of Section 12(C) of the Loan Agreement.

- As a result of Borrower's granting of liens pursuant to the Subsequent UCCs, Borrower's failure to keep the Inventory free from all liens, claims, encumbrances, and security interests, as required pursuant to Sections 10(F) and 10(O)(ii) of the Loan Agreement.

- Borrower's failure to cooperate with Lender in obtaining control of its Collateral in the possession of Teleescrow, as required under Sections 8(C)(ii) and 9(F) of the Loan Agreement.

- Borrower's failure to (i) cooperate with Lender to enable Lender's collection of funds from the Lockbox Account, and/or (ii) directly pay amounts outstanding on the Loans, as required under Sections 2(C)(i) and (iv) of the Loan Agreement.

Silver Birch Systems LLC
Daniel Oshatz
Page 4



Due to the failure of Borrower and Teleescrow to transfer or pay amounts held by Teleescrow to Lender, as a result of matured Accounts, and assuming no further transfers or payments are made to Lender, Borrower is projected to be out of formula no later than January 14, 2022, in violation of Section 11(J) of the Loan Agreement. This further Default will arise because a number of Accounts will soon be more than sixty (60) days past due and thus will not be "Eligible Accounts" for purposes of the Advance Formula under the Loan Agreement.

In light of the foregoing, Lender hereby demands that Borrower and/or Guarantor cure the Defaults on or before **January 18, 2022** by (collectively, the "***Compliance Requests***"):

- Immediately paying to Lender all amounts outstanding amounts on the Loans or directing Teleescrow to make all payments to Lender owed under the Loan Documents and the Payment Services Agreement;

- Providing Lender with a copy of all agreements between Borrower and Teleescrow;

- Providing Lender with copies of all loan documents and agreements supporting the loans secured by the Subsequent UCCs;

- Terminating or arranging for the termination of the Subsequent UCCs; and

- Providing Lender with all Required Reports.

## RESERVATION OF RIGHTS

There may be additional Defaults under the terms of the Loan Documents, and Lender does not waive any right to call any such defaults in the future and hereby reserves all rights and remedies against Borrower and Guarantor as a result thereof. Lender reserves all rights and remedies under the Loan Documents and under applicable laws and in equity, in connection with the foregoing Defaults, and further reserves all rights and remedies with respect to any other defaults now or hereafter in existence, whether known or unknown. Please be advised that under the Loan Documents, Lender is not obligated to provide any further notices prior to the exercise of remedies by Lender with respect to the foregoing Defaults. Nothing contained herein may be construed as the creation of a course of dealing or course of performance which would entitle Borrower or Guarantor to any notices or demands with respect to any such matters going forward.

Until Borrower cures to Defaults and repays the Loans in full, interest on the Loans will continue to accrue at the Default Rate and Borrower shall be obligated to pay all Lender's costs of collection, together with all other costs and expenses owed by Borrower to Lender under the terms of the Loan Documents. Neither this notice nor any discussions by Lender with you, Guarantor, or other representatives of Borrower or Guarantor, nor Lender's acceptance of payments less than the full amount due and payable under the Loan Documents constitutes: (a) Lender's waiver of any default(s) by Borrower or Guarantor under the Loan Documents whether or not referred to in any prior notice(s) of default(s); (b) Lender's election of remedies with respect to any such default(s), each of whom reserves all rights and remedies under the law and under the Loan Documents; (c) a waiver, modification, relinquishment, or forbearance by Lender of any right or remedy under the Loan Documents or under law, all of which Lender reserves; (d) a reinstatement of the Loans; or (e) a modification of any of the Loan Documents. For avoidance of doubt, any prior waiver or agreement to forbear is hereby revoked.

Silver Birch Systems LLC
Daniel Oshatz
Page 5



BRYAN
CAVE
LEIGHTON
PAISNER

No modification of the Loan Documents and no other agreement or understanding of any nature shall be deemed to have been entered into by or binding on Lender unless and until Lender and Borrower have reached an agreement on all issues, and such entire agreement shall have been reduced to a written document(s) that expressly states that it modifies the Loan Documents and is duly executed by Lender, Borrower, and any guarantor or similar indemnitor party to the Loans (including Guarantor).    Oral agreements, emails, memoranda or meetings, summaries or proposed terms shall have no effect whatsoever and shall not be binding on Lender.

Very truly yours,

Jason J. DeJonker

cc:    Crestmark, a division of MetaBank, National Association (via email)
       Teleescrow, Inc. (via email)

# EXHIBIT B